## INDUCTION TECHNOLOGIES, INC.

v.

## Stanley E. JUSTUS, et al.

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

Feb. 6, 2008 Session at the University of Tennessee College of Law.[1]

March 18, 2008.

Permission to Appeal Denied by Supreme Court Oct. 6, 2008.

1. Oral argument was heard in this case before law students at the University of Tennessee College of Law as a part of the Court's annual Docket Day at the College.

Robert S. Grot, Chattanooga, Tennessee, for the Appellant, Induction Technologies, Inc.

J. Christopher Clem, Chattanooga, Tennessee, for the Appellees, Stanley E. Justus, Wegner Automotive Research Company, Performance Technologies, Automotive Engine and Machines, Quality Engine Distributors, Roger Davidson and Tri–State Rental Services.

## OPINION

SHARON G. LEE, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and NORMA McGEE OGLE, Sp. J., joined.

The judgment creditor obtained an order of execution on certain items of personal property in the possession of the judgment debtor. After the sheriff's department seized the property, several parties filed a motion to intervene, alleging that some of the assets seized were owned by them and not the judgment debtor. Following a trial, the trial court ruled in the intervenors' favor, finding that they had demonstrated ownership of the property at issue. We affirm the judgment of the trial court.

### I. Background

On April 29, 2003, judgment creditor Induction Technologies, Inc. ("Induction") filed a verified petition to domesticate and register a judgment entered in the state of Georgia against judgment debtor Stanley E. Justus in the amount of $299,312.45. At that time, Mr. Justus was engaged in the business of rebuilding and retooling engine parts used for automotive racing, and he was operating a shop in Soddy Daisy, Tennessee. The sheriff's department, acting on direction of the Hamilton County Circuit Court's execution order, seized certain items of personal property, consisting mostly of engine parts and tools at Mr. Justus's shop in order to satisfy the judgment.

The intervenors, Wegner Automotive Research Company, Performance Technologies, Automotive Engine and Machines, Quality Engine Distributors, Roger Davidson, and Tri–State Rental Services, filed a motion to intervene, alleging among other things that certain seized assets were not owned by Mr. Justus, but had been shipped to him for repair or retooling and were actually owned by the intervenors. Wegner Automotive Research Company ("Wegner") further alleged that a couple of machine tools in Mr. Justus's possession had been previously sold to Wegner in order to satisfy a debt. The trial court granted the motion to intervene and a motion to quash the execution, and the case proceeded to bench trial.

At trial, Induction argued that the assets seized from Mr. Justus's shop were presumed to be owned by Mr. Justus because they were in his possession. The intervenors each provided proof by affidavit, trial testimony and, in some instances, documentary evidence, that they owned various items of personal property that had been seized and that they had delivered these items into the possession of Mr. Justus so that he could repair or otherwise work on them. Induction offered no proof contradicting the intervenors' claims of ownership. At the close of trial, the trial court held that "from the testimony I have heard here, I do believe that the [intervenor] claimants have satisfied their burden of proof to overcome the presumption and entitle them to the property in question." The trial court further ruled that the sale of the machine tools from Mr. Justus to Wegner that occurred prior to Induction's initial petition to domesticate and register the Georgia judgment was a valid sale. The trial court ordered the release of the property owned by the intervenors to the rightful owners.

## II. Issue Presented

Induction appeals, raising the issue, as restated, of whether the trial court erred in finding that the seized assets in Mr. Justus's possession were owned by the intervenors.

## III. Analysis

### A. Standard of Review

■ We review this non-jury case *de novo* upon the record of the proceedings below with a presumption of correctness as to the trial court's findings of fact unless the preponderance of the evidence is otherwise. Tenn. R.App. P. 13(d); *see also Hass v. Knighton,* 676 S.W.2d 554 (Tenn. 1984). When a trial court has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, considerable deference must be accorded to the trial court's factual findings. *Seals v. England/Corsair Upholstery Mfg. Co., Inc.,* 984 S.W.2d 912, 915 (Tenn.1999). There is no presumption of correctness with regard to the trial court's conclusions of law. *Campbell v. Florida Steel Corp.,* 919 S.W.2d 26, 35 (Tenn.1996); *Presley v. Bennett,* 860 S.W.2d 857, 859 (Tenn.1993).

### B. Rebuttable Presumption of Ownership

■■ Induction argues on appeal that the trial court was presented with insufficient evidence of ownership of the intervenors, that the trial court "improperly applied the burden of proof relative to the issue of ownership of property in possession and control of the judgment debtor," and that the trial court "failed to consider the totality of the circumstances" in rendering its decision. Generally speaking, "a rebuttable presumption of ownership arises from possession of property." 73 C.J.S. *Property* § 70 (updated 2008); *see also Park v. Harrison,* 27 Tenn. (8 Hum.)

412, 1847 WL 1670, at *1 (Tenn.1847); *Arnold v. May*, 10 Tenn.App. 315, 1929 WL 1648, at *4 (Tenn.Ct.App.1929).

At trial, Bill Haenelt, owner of intervenor Quality Engine Distributors, testified via telephone that he had shipped a racing engine carburetor, identified by make and model number, to Mr. Justus for repair, and that it was in Mr. Justus's possession at the time of the execution and seizure of the personal property at his shop. Curt Wollin, owner of intervenor Automotive Engine & Machine, testified via telephone that he had shipped two carburetors to Mr. Justus for repair and that he had not received them back. Jim Mikel, owner of intervenor Performance Technologies, Inc., testified via telephone similarly that he had sent two racing carburetors to Mr. Justus for repair that were not sent back and had been seized by the sheriff's department. The testimony of these three witnesses, Haenelt, Wollin, and Mikel, that they owned the seized carburetors at issue was supported by documentary evidence in the form of dated invoices supplied by Mr. Justus d/b/a Stallion Racing Components, and further supported by the witnesses' sworn affidavits to the same effect.

Carl Wegner, owner of intervenor Wegner Automotive Research Company, testified in person at the trial. His testimony generally followed and affirmed the statements in his affidavit, which attested to the following:

> On March 5, 2004, I purchased from Stanley Justus certain equipment, a copy of the invoice is attached hereto, which items are being used by Mr. Justus for the purpose of providing racing engine components to me and others, which in turn supply the components to the racing industry.
>
> In addition to the items listed on the attached invoice, I am also the owner of a compressor, storage tank and vibrato-ry tumbler which I purchased from the manufacturer and allowed Mr. Justus to retain for the purposes of providing the racing engine components.
>
> Mr. Justus's business is an important supplier to Wegner Automotive Research and his continued operations are essential to my business. This is the reason for the equipment being owned in this manner and allowing him to use it.
>
> In addition to the foregoing, Wegner Automotive Research also owned the following items which were in Mr. Justus's possession for the purpose of repair and reconditioning:
>
> (2) Holley/SRC 390 cfm 4brl carburetors for use in NASCAR BGN Competition;
>
> (1) Holley/SRC 390 cfm 4brl carburetor for use in NASCAR Craftsman Truck Competition;
>
> (1) Holley/SRC 830 cfm carburetor for use in NASCAR Nextel Cup Competition;
>
> (2) Cast aluminum GM SB–2 cylinder;
>
> (1) Cast aluminum Ford cylinder head;
>
> (1) Cast aluminum GM "18–degree" cylinder head, used; and
>
> (1) Cast aluminum Brodix GB–2001 cylinder head, new.
>
> All of the foregoing items were held at Mr. Justus's business known as Stallion Racing Components.... Mr. Justus has no ownership interest in any of the foregoing equipment or property.

Mr. Wegner provided invoices from Mr. Justus for the engine parts and machine tools referenced in his affidavit. At trial, Mr. Wegner was presented with photographs of some of the items seized from Mr. Justus and he confirmed that the items in the photographs were owned by Wegner Automotive Research.

Courtney Hizer, principal owner of Induction, testified that he had "some ques-

tions" about the claimed ownership of the intervenors, but no documentation that the items claimed by the intervenors did not belong to them. Regarding the testimony of the intervenors as outlined above, Mr. Hizer testified that "I don't feel like any of these people are lying or anything like that. . . ." Induction did not provide any other evidence tending to show that the intervenors did not own the seized property they claimed to own.

As noted, after hearing the testimony and considering the evidence at trial, the trial court ruled that the intervenor claimants had "*satisfied their burden of proof to overcome the presumption* and entitle them to the property in question." It is thus apparent that the trial court did not improperly place the burden of proof on Induction as it argues. Rather, the trial court found that the burden of rebutting the presumption created by Mr. Justus's possession of the disputed items had been met by the intervenors. The evidence does not preponderate against the trial court's ruling.

It is clear that the decision of the trial court in this matter as to who owned the property was largely dependent on its determination of the credibility of the various witnesses. Our review of decisions that hinge upon witness credibility is guided by the recognition that the trial court is in a better position to judge the credibility of witnesses, and thus we give a trial court's credibility determinations significant deference, as we have recently stated:

> The credibility of witnesses is a matter that is peculiarly within the province of the trial court. *See Bowman v. Bowman*, 836 S.W.2d 563, 567 (Tenn.Ct.App.

1991). . . . The cases are legion that hold a trial court's determinations regarding witness credibility are entitled to great weight on appeal. *See, e.g., Massengale v. Massengale*, 915 S.W.2d 818, 819 (Tenn.Ct.App.1995). In the absence of unrefuted authentic documentary evidence reflecting otherwise, we are loathe to substitute our judgment for the trial court's findings with respect to the credibility of the witnesses.

*Lockmiller v. Lockmiller*, C/A No. E2002–02586–COA–R3–CV, 2003 WL 23094418 at *4 (Tenn.App. E.S., filed Dec. 30, 2003).

▮▮▮ Finally, Induction argues that the trial court erred in failing to apply and interpret Tenn.Code Ann. § 66–3–103[2] to conclusively establish that certain of the items seized were owned by Mr. Justus. The issue of the applicability of this statute, however, was not raised by Induction in its pleadings nor at trial. The first time Induction argued for the applicability of Tenn.Code Ann. § 66–3–103 was in its post-trial motion to alter or amend the judgment. As a general rule, "questions not raised in the trial court will not be entertained on appeal." *Cookeville Regional Med. Ctr. v. Humphrey*, 126 S.W.3d 897, 905–06 (Tenn.2004); *Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn.1983). The Supreme Court has stated that "[w]e are of the opinion that there is little difference between an issue improperly raised before the trial court at the last minute and one that was not raised at all." *In re Adoption of E.N.R.*, 42 S.W.3d 26, 32 (Tenn.2001); *see also Woodroof v. Fisher*, 180 S.W.3d 542, 550 (Tenn.Ct.App.2005). Generally, therefore, an issue presented for the first time in a post-trial motion to

---

2. Tenn.Code Ann. § 66–3–103 provides that "[p]ossession of goods and chattels continued for five (5) years, without demand made and pursued by due process of law, shall, as to the creditors of the possessor or purchasers from the possessor, be deemed conclusive evidence that the absolute property is in such possessor, unless the contrary appear by bill of sale, deed, will, or other instrument in writing, proved or acknowledged and registered."

alter or amend is waived as too late. *Id.* For this reason we decline to consider Induction's argument that the trial court erred in failing to apply the provision of Tenn.Code Ann. § 66–3–103 in this case.

### IV. Conclusion

For the aforementioned reasons, the judgment of the trial court is affirmed. Costs on appeal are assessed to the Appellant, Induction Technologies, Inc.